IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Stephen J. Guidetti, )<br>　　　　　　　　　　　Plaintiff, )<br>　　　vs. )<br>NFN Donahue, et al., )<br>　　　　　　　　　　　Defendants. )<br>＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿ ) | Civil Action No. 6:11-1249-HMH-KFM<br><br>**REPORT AND RECOMMENDATION** |

　　　　　This matter is before the court on the defendants' and plaintiff's motions for summary judgment (docs. 88, 100).  The plaintiff, who is proceeding *pro se*, alleges constitutional violations by the defendants arising out of a traffic stop on March 20, 2011. He seeks relief pursuant to Title 42, United States Code, Section 1983.

　　　　　Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

　　　　　This matter was initially assigned to the Honorable Jacquelyn D. Austin, United States Magistrate Judge.  After the plaintiff filed a complaint against Judge Austin, the matter was reassigned to the undersigned.

　　　　　On May 2, 2012, defendants William Patrick Donohue and Alex Payne filed a motion for summary judgment.  On May 3, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his own motion for summary judgment on June 6, 2012, which this court has also construed as his opposition to the defendants' motion.  The defendants responded to the plaintiff's motion on June 25, 2012.

## FACTS PRESENTED

The plaintiff initiated this Section 1983 civil rights action on July 8, 2011. In his amended complaint, the plaintiff sets forth a series of allegations against approximately 34 defendants. Prior to service, the court dismissed all defendants except William Patrick Donohue, Alex Payne, and 20 "John/Jane Does."

The plaintiff's allegations arise out of a routine traffic stop that occurred on March 20, 2011. On that day, Greenville County Sheriff's Deputy Donohue observed a 1996 Oldsmobile Cutlass Supreme SL at the Kash gas station with expired Alabama tags registered to a Toyota minivan. Deputy Donohue approached the plaintiff while he was filling the car with gas. At that time, the plaintiff provided Deputy Donohue with a South Carolina Identification Card, a bill of sale, and what the plaintiff claimed was his "political will." The plaintiff admitted to Deputy Donohue that he did not have a driver's license and that the car was not registered. He argued that he did not need to register the car because it was private property. Deputy Donohue informed the plaintiff "that he was not allowed to drive without a license" and left the scene to avoid a debate with the plaintiff (Donohue aff. ¶¶ 2-5, supp. report).

Subsequently, Deputy Donohue observed the plaintiff drive the Oldsmobile from the gas station onto Highway 418 headed towards Interstate 385. Deputy Donohue pursued the vehicle and initiated a traffic stop (*id.*). The plaintiff did not have a driver's license, registration, or insurance coverage on the vehicle (*see id.*; amended comp. ¶¶ 72-76). Deputy Donohue cited the plaintiff for driving without a license, failure to register the vehicle, and operating uninsured (*see* Donohue aff. ¶¶ 2-5, citation #s 78932 FK, 78933 FK, 78934 FK). The plaintiff was then transported to the detention center by Deputy Payne. The vehicle was impounded and inventoried by the Greenville County Sheriff's Office. Two blue tablets, which the plaintiff identified as Viagra, were found during an inventory of the vehicle. The plaintiff could not to produce a valid prescription for Viagra, and the pills were seized (Donohue aff. ¶ 6, supp. report). Subsequently, the plaintiff was released from the

detention center and recovered possession of the vehicle. A disposition on the charges is still pending.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

3

The plaintiff's amended complaint contains a variety of alleged constitutional violations, none of which are supported with evidence. The defendants argue that their actions do not rise to the level of a constitutional violation. This court agrees. In his amended complaint, the plaintiff specifically claims that he was wrongfully arrested and subjected to an unlawful search and seizure. As Deputy Donohue had probable cause to stop the plaintiff and arrest him, the plaintiff's claims are without merit.

"The fundamental question in determining whether an arrest is lawful is whether there was 'probable cause' to make the arrest." *Wortman v. City of Spartanburg*, 425 S.E.2d 18, 20 (S.C. 1992). In assessing the existence of probable cause, it is necessary for the court to examine the totality of the circumstances as are known to the officer at the time of the arrest. The plaintiff bears the burden of demonstrating lack of probable cause. *Parrott v. Plowden Motor Co.*, 143 S.E.2d 607, 609 (S.C. 1965). Probable cause is said to exist when the facts and circumstances known to the officer would warrant the belief of a prudent person that the arrestee had committed or was committing an offense. *State v. Moultrie,* 451 S.E.2d 34, 37 (S.C. Ct. App. 1994); *Taylor v. Waters,* 81 F.3d 429, 434 (4th Cir. 1996). "The determination of probable cause is not an academic exercise in hindsight." *Jackson v. City of Abbeville, Riley's BP, and Angela McCurry,* 623 S.E.2d 656, 659 (S.C. Ct. App. 2005). Probable cause requires more than a "bare suspicion" but less than evidence necessary to convict. *United States v. Gray,* 137 F.3d 765, 769 (4th Cir. 1998).

Deputy Donohue clearly had probable cause to believe that the plaintiff was committing the offense of driving without a valid driver's license. Deputy Donohue initiated a routine traffic stop when he observed the plaintiff driving on a public roadway mere moments after the plaintiff admitted he did not have a driver's license and argued that he did not need to register his vehicle. In his amended complaint, the plaintiff contends that he "was not involved in any criminal activity before, during or after March 20, 2011 at an[y] time" (amended comp. ¶ 53); however, he actually alleges in his complaint:

4

72. Plaintiff does not have a Contract with the Corporation SOUTH CAROLINA, STATE OF, for a known document called a "Driver's License;"

73. Plaintiff does not have a contract with the Corporation; SOUTH CAROLINA, STATE OF, that would give up rights of ownership of the Plaintiff's Private property; with a known document called a "REGISTRATION;"

74. Plaintiff does not have a contract with the Corporation; SOUTH CAROLINA, STATE OF, with a known document called a "motor vehicle title;" from the SOUTH CAROLINA DEPARTMENT OF MOTER VEHICLES;

75. Plaintiff's property is not registered as a "motor vehicle" with the Corporation; SOUTH CAROLINA STATE OF; 76. Plaintiff's property is not titled as a "motor vehicle" with the Corporation; SOUTH CAROLINA DEPARTMENT OF MOTOR VEHICLES.

(Comp. ¶¶ 72-75).

Contrary to the plaintiff's allegations, driving an uninsured, unregistered motor vehicle without a driver's license are in fact violations of South Carolina law. South Carolina Code Annotated § 56-1-20 mandates, with few express exemptions, that any person driving a motor vehicle in this State on a public roadway must have a valid motor vehicle driver's license. Section 56-3-110 provides that every motor vehicle operated or moved upon a public roadway in this State must be registered and licensed, and failure to do so is a misdemeanor. Furthermore, the failure to purchase a license, maintain any records, and/or supply any information that is required by law or regulation is a misdemeanor and, upon conviction, subject to fines and imprisonment. S.C. Code Ann. § 56-17-10. Section 56-10-225 provides that a person who fails to maintain the proof of insurance in his motor vehicle is guilty of a misdemeanor and, upon conviction, is subject to the same punishment provided by law for failure to provide proof of registration upon demand. In addition, if at any time the department determines that the vehicle was without insurance coverage, the owner's registration and driving privileges are subject to suspension. *See* S.C. Code Ann. §§56-10-225, 56-10-520.

Probable cause existed at the time Deputy Donohue arrested the plaintiff for multiple violations of South Carolina's motor vehicle laws (Donohue aff., citation #s 78932 FK, 78933 FK, and 78934 FK). The plaintiff even admits that on March 20, 2011, when he was pulled over in a 1996 Oldsmobile Cutlass Supreme SL, he did not have a driver's license or valid title to the vehicle, and the vehicle was not registered or insured. As a result of the lawful traffic stop, the plaintiff's vehicle was impounded, and the plaintiff was lawfully taken into custody and searched. In *United States v. Robinson*, 414 U.S. 218, 235 (1973), the United States Supreme Court held that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable search' under that Amendment." Furthermore, in *South Dakota v. Opperman*, 428 U.S. 364 (1976), the United States Supreme Court held that a routine inventory search of an impounded car does not violate the Fourth Amendment's prohibitions on unreasonable searches and seizures. Therefore, the plaintiff's claims that he was subjected to an unlawful, warrantless search are unfounded.

The plaintiff also alleges his constitutional rights were violated because during the traffic stop he was asked to provide evidence "against Himself" and he was not read his *Miranda* rights (amended comp. ¶¶48-49). The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that an individual must be advised of his rights against self-incrimination before any statements "made during custodial interrogation could be admitted in evidence." *Dickerson v. United States*, 530 U.S. 428, 431–32 (2000). "Absent formal arrest, *Miranda* warnings only apply 'where there has been such a restriction on a person's freedom as to render him 'in custody.'" *United States v. Parker*, 262 F.3d 415, 419 (4th Cir.2001) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)). It appears that the plaintiff is referring to the questions asked during the routine traffic stop regarding his license, registration, title, and proof of insurance. The Supreme Court in *Berkemer v. McCarty*, 468 U.S. 420, 437-40 (1984), held that an individual subject to a

6

routine traffic stop is not "in custody" for the purposes of *Miranda*. The routine inquiry occurred during the traffic stop and before the plaintiff was taken into custody; therefore, plaintiff's allegations are unfounded.

The plaintiff also alleges that he was subjected to "cruel and unusual punishments" (amended comp. ¶ 122). Specifically, he contends that his handcuffs caused "intense pain to [his] work injury" to his left wrist (*id.* ¶¶ 90-93). He further alleges that during his 11½ hours in a cell in the detention center, he "was tortured at the detention jail by three unknown third party deputies" and that his cell was "freezing cold" (*id.* ¶¶ 97, 101, 122).

Confinement conditions of arrestees or pretrial detainees are to be evaluated under the Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520 535 n.16 (1979). To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir.1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir.) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process-even though the conditions imposed serve some ordinarily legitimate state objective." *Hamm v. Dekalb Co.*, 774 F.2d 1567, 1573 (11th Cir.1985). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by

deliberate indifference on the part of the defendants. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. (1993). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. *Id*. at 1380–81. In the alternative, the inmate must show a substantial risk of such serious harm resulting from his exposure to the challenged conditions. *See De'Lonta v. Angelone*, 330 F.3d 630, 634 ( 4th Cir. 2003) (citations omitted).

An arrestee or pretrial detainee's claim of excessive force is also analyzed under the Due Process Clause of the Fourteenth Amendment.[1] *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008). To succeed on such a claim, the plaintiff must demonstrate that the defendants "inflicted unnecessary and wanton pain and suffering" upon the detainee. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). The core judicial inquiry turns on whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). Painful handcuffing, without more, does not constitute excessive force. *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002).

Here, the plaintiff has submitted absolutely no evidence in support of his allegations regarding his wrist pain from the handcuffs, "freezing cold" cell, and "torture" by three unknown persons. Conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross,* 759 F.2d at 365. As the plaintiff has failed to raise issues of material fact on his conditions of confinement and excessive force claims, summary judgment is appropriate. Furthermore, "[t]o the extent Plaintiff contends that prison authorities were out to 'get him' or otherwise were engaging in some kind of conspiracy against him, this bald assertion, without more, is not sufficient to survive summary judgment." *Page v. Reynolds*, C.A. No. 9:07-3060-HFF-BM, 2008 WL 4427324, at *10 (D.S.C. Sept. 29, 2008) (citing *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir.1995)

---

[1]"The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir. 1997) (en banc).

("We have specifically rejected Section 1985[2] claims whenever the purported conspiracy is alleged in a mere conclusory manner")).

### Qualified Immunity

The defendants further argue that they are entitled to qualified immunity as their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.* In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). The plaintiff has failed to show that the defendants violated any of his constitutional or statutory rights. Therefore, the defendants are entitled to the protections afforded by the doctrine of qualified immunity.

---

[2]Section 1985 of Title 42 of the United States Code provides in pertinent part:

If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

***State Law Claims***

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 88) be granted and the plaintiff's motion for summary judgment (doc. 100) be denied. Should the district court adopt this recommendation, any pending nondispositive motions will be rendered moot.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

August 20, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.